Paul S. Bovarnick, OSB 791654, MSB 2182
Rose, Senders and Bovarnick, LLC
1205 NW 25th Avenue
Portland, OR 97210
Telephone:  (503) 227-2486
Facsimile:   (503) 877-1768
E-mail Address: pbovarnick@rsblaw.net

James Carey, MSB 4441
Church Harris Johnson & Williams P.C.
2601 E. Broadway St.
Helena, MT  59601
Telephone: (406) 761-3000
Facsimile: (406) 453-2313
E-mail address: JCarey@chjw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| TARRICK PEYTON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NATIONAL PASSENGER RAILROAD  CORPORATION ("AMTRAK"), a Federally chartered corporation, and BURLINGTON NORTHERN SANTA FE, LLC, a Delaware Corporation ("BNSF"),<br><br>　　　　Defendants. | Case No.<br><br>COMPLAINT - FEDERAL EMPLOYERS LIABILITY ACT (45 USC §51); NEGLIGENCE<br><br>JURY TRIAL DEMAND |

COMPLAINT - 1

Plaintiff, Tarrick Peyton, by and through his attorneys, Paul S. Bovarnick and James Carey, and for his Complaint against Defendants Amtrak and BNSF hereby alleges:

1.

At all material times, Defendants were licensed to do business in Montana as common carriers by railroad in interstate commerce. Defendant BNSF is incorporated in Delaware, with headquarters in Texas.

2.

Jurisdiction is conferred on this Court by with respect to Amtrak by 45 USC §56. Jurisdiction is conferred on this Court with respect to BNSF by 29 USC §1331, and 28 USC §1332 for his claims. The amount in controversy exceeds $75,000.

3.

Venue is within the District of Montana pursuant to 28 USC §1391(b) as this claim arose in this judicial District, and within the Great Falls Division.

4.

At all material times Defendant BNSF owned, maintained and controlled the track on which Plaintiff's train, Amtrak train 7, called the *Empire Builder*, was traveling when it derailed on September 25, 2021.

COMPLAINT - 2

5.

Plaintiff is 41 years old. He is a father of four, a Marine veteran, college graduate and worked for the Union Pacific Railroad as a conductor and locomotive engineer before coming to work with Amtrak.

6.

Plaintiff was hired by Amtrak as an On-Board Service Attendant in August, 2021. Before his first trip with Amtrak, Plaintiff received three weeks of instruction and training. At the time of the derailment in Joplin, Montana, September 25, 2021, Plaintiff was making his third trip as an Amtrak On-Board Service Attendant.

7.

Although Amtrak trains have derailed in the past, often with loss of life among its passengers, Amtrak never provided Plaintiff with any training in how to respond to a derailment, nor in how to evacuate passengers in the event of a derailment, nor in how to protect and rescue passengers in a derailment.

8.

On September 25, 2021 Plaintiff was working as an On Board Service Attendant on Train 7, the *Empire Builder*. At the time of the derailment, Train 7 was traveling from Chicago to Seattle with 146 passengers and sixteen crew.

COMPLAINT - 3

9.

At approximately 3:48 pm Plaintiff was seated in the second car following the engines, when he felt a hard bump. Because of his experience with the Union Pacific Railroad, he recognized that the train was about to derail and Plaintiff reflexively rose from his seat. When he did so there was another violent jolt, and he was thrown hard against the wall next to him, striking his back, shoulder and head.

10.

As soon as his car abruptly stopped moving, Plaintiff immediately checked on the passengers in his car. After determining that none of the passengers in his car were injured, he looked out of the car and saw that the last five cars of Train 7 had derailed, with the last four cars of Train 7 on their sides on the ground next to the track. Plaintiff exited his car so he could go to the derailed cars to assist the survivors. In order to get off of his car he had to jump to the ground. When he did so, he landed on unstable rock, falling on his hip. Plaintiff got up off the ground and rushed more than three hundred yards to the derailed cars to try to rescue survivors. As Plaintiff ran towards the derailed cars, he only saw one other Amtrak employee, Danielle Travers, an assistant conductor, moving towards the derailed cars.

/ / / / /

COMPLAINT - 4

11.

When Plaintiff reached the first of the five derailed cars, which was upright and still partially on the track, he saw panicked passengers, some yelling, some crying, trying to crawl out of windows. He directed the passengers not to try to crawl out of the windows and to instead exit safely through the doors. Plaintiff then went towards the next derailed car.

12.

As Plaintiff approached the next car, the observation car, lying on its side, he saw one of his passengers, Zach Schneider, lying dead on the ground. Plaintiff had gotten to know Mr. Schneider and his wife during the trip. During the trip, the Schneiders had told Plaintiff that they were celebrating their fifth anniversary. Plaintiff tried to cover Mr. Schneider's corpse. Later, after officials told Ms. Schneider that her husband was among the dead, he prayed with her.

13.

After covering Mr. Schneider's body, he encountered another passenger lying on the ground. The observation car was lying on that passenger's prosthetic legs. Plaintiff could see the passenger's brain beneath a deep gash in the passenger's skull. Another passenger was freeing the trapped passenger, so Plaintiff continued to look for passengers from the observation car.

14.

Plaintiff could see the Amtrak conductor in the observation car assisting passengers. Although he was deeply shaken by what he had just seen, Plaintiff climbed into the observation car to assist the conductor. There he saw more passengers, some crying, some bloodied. Plaintiff climbed back out of the car where he found two more passengers he had befriended, Don and Marjorie Vardahoe, lying dead on the ground. During the journey from Chicago, the Vardahoes had told him that this was a trip long-planned, in celebration of their fiftieth wedding anniversary.

15.

After encountering the Vardahoes' bodies, Plaintiff saw that passengers were on top of the observation car attempting to free another passenger and Amtrak employee who were buried in rock that had entered the car when it tipped over. Plaintiff dug out as much gravel as he could before pain and fatigue forced him to hand his shovel to someone else. After he finished his effort to free the Amtrak employee and passenger, Plaintiff climbed out of the car and looked for more victims. Plaintiff also wanted to make sure there was nothing flammable that might threaten the survivors. At this point Plaintiff had still seen only two other Amtrak employees actively trying to assist the survivors of the derailment.

COMPLAINT - 6

16.

After Plaintiff and the other two employees determined that there were no more dead or trapped victims, Plaintiff helped the emergency responders shepherd the surviving passengers and crew to the buses and ambulances which were beginning to arrive to take the survivors away from the scene.

17.

After about an hour of working to rescue and help passengers and crew, Plaintiff was exhausted, in pain and vomiting. He was taken in a bus by local authorities to a nearby high school where he was examined by an EMT.  The EMT was concerned by Plaintiff's pain and vomiting, so he sent Plaintiff by ambulance to Missouri River Medical Center, sixty-five miles from Joplin, in Fort Benton.

18.

When he arrived at Missouri River Medical Center, Plaintiff was taken to the Emergency Department, where he was examined, Xrayed and given a CAT scan. The Emergency Department staff wanted Plaintiff to have an MRI, and they instructed Plaintiff to immediately seek medical attention and an MRI upon his return to Washington.  Plaintiff has now been diagnosed with a head injury, shoulder injury, injuries to the discs, nerves and connective tissue in his low back and with Post-Traumatic Stress Disorder.  He is continuing to treat for his injuries and has been warned that he may require surgery.

COMPLAINT - 7

## FIRST CLAIM FOR RELIEF

Federal Employers Liability Act - 49 USC §51, *et seq.*

19.

Plaintiff's injuries were due in whole or in part to the acts and omissions negligence of Amtrak in failing to provide Plaintiff with safe tools and equipment and a safe place to work, in one or more of the following particulars:

a. Amtrak operated train 7 at a dangerous speed at the location at which train 7 derailed;

b. Amtrak failed to discover that the track on which train 7 derailed was unsafe prior to the derailment;

c. Amtrak failed to make the cars on train 7 safe for passengers and crew in a derailment;

d. Amtrak failed to train its crew to safely respond in a derailment; and

e. Amtrak failed to warn the passengers and crew of train 7 of the risk of derailment that existed at the location at which the derailment occurred.

## SECOND CLAIM FOR RELIEF

Negligence - BNSF

20.

Plaintiff's injuries were due in whole or in part to the acts and omissions of BNSF, which were negligent in one or more of the following particulars:

a. BNSF failed to discover a defect in its track which caused or contributed to the derailment of Amtrak train 7 on September 25, 2021;

b. BNSF failed to warn Amtrak of the defect in its track which caused or contributed to the derailment of Amtrak train 7 on September 25, 2021;

c. BNSF failed to repair the defect in the track which caused or contributed to the derailment of Amtrak train 7 on September 25, 2021;

d. Prior to the derailment of Amtrak train 7, BNSF failed to institute a slow order for the track on which Amtrak train 7 derailed.

21.

As a result of the negligence of the Defendants and each of them, Plaintiff suffered injuries to his head, shoulder, spine and hip. The derailment also caused Plaintiff to suffer Post-Traumatic Stress Disorder. As a result of his injuries, Plaintiff has incurred economic losses, among them lost income, lost pension benefits and medical bills and will suffer economic losses in the future. Plaintiff

has suffered from pain and distress caused by his injuries and will continue to suffer from pain and distress in the future.

WHEREFORE, Plaintiff prays the Court for Judgment against the Defendants and each of them and an award of damages and for his costs and disbursements incurred herein.

JURY DEMAND:  Plaintiff demands a jury trial in this action.

DATED: December 13, 2021.

> Paul S. Bovarnick
> Rose, Senders and Bovarnick, LLC
>
> By:  *s/ Paul S. Bovarnick*
> Paul S. Bovarnick, MSB No. 2182, OSB No. 791654, WSB No. 32706
> (503) 227-2486
> pbovarnick@rsblaw.net
>
> AND
>
> James Carey
> Church Harris Johnson & Williams, P.C.
>
> By:  *s/ James P. Carey*
> James P. Carey, MSB No. 4441
> (406) 761-3000
> JCarey@chjw.com
>
> Attorneys for Plaintiff

COMPLAINT - 10